KATHERINE K. O'BRIEN
*Pro Hac Vice application pending*
Montana Bar No. 13587
Earthjustice
P.O. Box 2297
South Portland, Maine 04116
kobrien@earthjustice.org
Tel: 212-284-8036/Fax: 212-918-1556

GREGORY C. LOARIE
State Bar No. 215829
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
gloarie@earthjustice.org
Tel: 415-217-2000/Fax: 415-217-2040

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BREAST CANCER PREVENTION PARTNERS, SIERRA CLUB, DEFEND OUR HEALTH, and TEXAS ENVIRONMENTAL JUSTICE ADVOCACY SERVICES, | Civil Action No. 3:21-cv-7360 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, | |
| Defendants. | |

**INTRODUCTION**

1.      Plaintiffs Breast Cancer Prevention Partners, Sierra Club, Defend Our Health, and Texas Environmental Justice Advocacy Services (collectively, "Plaintiffs"), bring this civil action against the United States Environmental Protection Agency and Michael Regan, Administrator of the United States Environmental Protection Agency (collectively, "Defendants" or "EPA").

2.      This suit challenges EPA's decades-long delay in finalizing its proposed rule to list a widely used toxic plastic additive called diisononyl phthalate ("DINP") on the Toxics Release Inventory (the "Inventory").  The Inventory, created by Congress in the Emergency Planning and Community Right-to-Know Act of 1986 (the "Right-to-Know Act"), 42 U.S.C. §§ 11001–11050, is a federal database that provides public information about the facilities where listed toxic chemicals are manufactured and used and alerts communities to toxic releases from those facilities into the air, water, and soil.

3.      In response to a citizen petition, EPA determined in September 2000 that DINP satisfies the statutory criteria for listing on the Inventory based on evidence linking DINP exposure to serious human health harms, including permanent damage to the developing fetus and permanent damage to the liver and kidneys.  Accordingly, EPA published a proposed rule to list the chemical.

4.      In the intervening twenty-one years, however, EPA has never finalized its proposed rule.  As a result, Plaintiffs and their constituents lack access to information about the locations where DINP is manufactured, used, and released into the environment that the Inventory would otherwise provide.  To address this decades-long unreasonable delay and EPA's refusal to commit to any timeline for finalizing its DINP listing rule, Plaintiffs seek an order from this Court directing EPA to conclude its rulemaking process within sixty days.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under federal law.  This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, and the relief requested is authorized by 5 U.S.C. § 706(1) and 28 U.S.C. §§ 2201–02.

6.    Venue is proper in this Court under 28 U.S.C. § 1391(e) because Plaintiffs Breast Cancer Prevention Partners and Sierra Club are headquartered in this District.

## INTRADISTRICT ASSIGNMENT

7.    This case is properly assigned to the San Francisco or Oakland Division under Civil L.R. 3-2(c) because Plaintiffs Breast Cancer Prevention Partners and Sierra Club are headquartered within those divisions.

## PARTIES

8.    Plaintiff Breast Cancer Prevention Partners, a non-profit organization headquartered in San Francisco, California, works to prevent breast cancer by eliminating human exposure to toxic chemicals and radiation.  As part of that work, Breast Cancer Prevention Partners educates the public and policymakers about human exposure to phthalates, many of which are linked to breast cancer and other serious human health effects, and advocates for health-protective regulations for such chemicals.  For example, Breast Cancer Prevention Partners maintains an online "Glossary of Exposures" on phthalates that provides public information on how to reduce exposures to these chemicals, including DINP.  The organization's staff also respond to questions from individual constituents who are concerned about the presence of phthalates in their homes, schools, and workplaces and are seeking information about their potential exposures as well as steps they can take to reduce or eliminate those exposures.  In January 2021, Breast Cancer Prevention Partners submitted extensive comments on EPA's plan for the scope of its risk evaluation of the phthalates DINP and diisodecyl phthalate under the Toxic Substances Control Act, which specifically advocated for EPA to add DINP to the Inventory.[1]

9.    Plaintiff Sierra Club is a non-profit environmental advocacy organization headquartered in Oakland, California.  Sierra Club comprises sixty-seven chapters with more than 837,000 members across all fifty states and the District of Columbia.  Sierra Club strives to protect

---

[1] Alaska Community Action on Toxics et al., *Comments on Draft Scopes of the Risk Evaluations to be Conducted Under the Toxic Substances Control Act for Di-isononyl Phthalate and Di-isodecyl Phthalate,* Docket Nos. EPA-HQ-OPPT-2018-0435, EPA-HQ-OPPT-2018-0436 (Jan. 11, 2021) (attached as Exhibit 1).

the nation's air, water, land, and communities from pollution and provide a healthy environment for all people.   Sierra Club has a dedicated Toxics and Health program devoted to addressing the widespread toxic chemical pollution that is jeopardizing communities across the country and disproportionately harming women, children, and communities of color.   Sierra Club staff in this program partner with and support a volunteer-led Toxics Team that educates Sierra Club members and the public at large about dangerous chemicals in their communities and advocates for laws and policies that will adequately protect the public, wildlife, and the environment from exposure to toxic chemicals.   To this end, Sierra Club has a "Toxic Chemicals Policy," which promotes full reporting of unsafe chemical exposures to the public.   The policy encourages Sierra Club members and staff to develop and disseminate information about toxic substances to promote public understanding of exposures and associated risks and empower activists to help protect the environment and human health from toxic chemicals.   Inventory data documenting toxic chemical uses and releases are critical to this work.

10.     Plaintiff Defend Our Health is a non-profit organization headquartered in Portland, Maine, that is dedicated to creating a world where all people have equal access to safe food and drinking water, healthy homes, and products that are toxic-free.   Defend Our Health works for systemic change through science-based policy advocacy at the state and federal levels, including by advocating for stronger federal regulation of toxic chemicals through the Toxic Substances Control Act.   As part of this advocacy, Defend Our Health has commented on the need for EPA to add DINP to the Inventory to ensure that EPA understands where and how people are exposed to DINP and regulates the chemical adequately to protect public health.   Defend Our Health has also been leading advocacy efforts to address exposure to endocrine-disrupting phthalates such as DINP among high-risk populations, especially women of child-bearing age.   As part of these efforts, Defend Our Health has pursued market-based strategies to encourage companies to identify toxic chemicals, including phthalates like DINP, in their supply chains and to eliminate these chemicals or switch to safer alternatives.   Defend Our Health relies on data from the Inventory to identify supply chain sources of toxic chemicals as well as impacted communities.

1        11.      Plaintiff Texas Environmental Justice Advocacy Services ("t.e.j.a.s.") is a non-profit

2   organization based in the east end of Houston, Texas.  T.e.j.a.s. serves the community surrounding

3   the Houston Ship Channel—the busiest international port in the country and site of the largest

4   petrochemical refinery complex in the Western Hemisphere—by providing its volunteers,

5   supporters, and other community members the tools to create sustainable, environmentally healthy

6   communities.  To that end, t.e.j.a.s. educates its constituents about the sources and extent of

7   industrial pollution in their community and the health concerns arising from that pollution,

8   empowers individuals with an understanding of applicable environmental laws and regulations,

9   advocates to enforce and strengthen those laws, and offers community-building skills and resources

10  for effective community action and greater public participation.  Information from the Inventory is

11  vital to t.e.j.a.s.'s work in educating its constituents about the sources and extent of chemical

12  pollution that threatens their health and wellbeing, including toxic releases from industrial facilities

13  that result from extreme weather events and other accidents.  Without Inventory data identifying the

14  locations where substantial quantities of DINP are stored and used, the individuals and communities

15  that t.e.j.a.s. serves cannot effectively prepare for such incidents nor participate fully in public

16  processes to develop adequate emergency response plans and other protective measures.

17       12.      Indeed, t.e.j.a.s. has learned from a database EPA maintains under the Toxic

18  Substances Control Act of at least two facilities in the Houston area that manufacture, import, and/or

19  use substantial quantities of DINP—including one facility that in 2011 alone imported more than one

20  million pounds of DINP.  But that database does not contain information that the Inventory would

21  provide, such as information about releases of DINP into surrounding communities and the

22  environment.  Accordingly, EPA's failure to list DINP on the Inventory deprives t.e.j.a.s.'s

23  volunteers, staff, and constituents of information about whether and to what extent these facilities are

24  releasing DINP into the air they breathe, the water they drink, or the places where they live, work, or

25  send their kids to school.

26       13.      In sum, because of EPA's decades-long delay in finalizing its proposed rule to list

27  DINP on the Inventory, each of the Plaintiff organizations and their members, volunteers, staff,

28

1   and/or supporters are denied access to information about potential and actual exposure to DINP that

2   they are entitled to under the Right-to-Know Act.

3          14.     This harms the Plaintiff organizations' ability to carry out their work—including their

4   public education and regulatory advocacy—and directly harms the interests that their members,

5   supporters, staff, volunteers, board members, and other constituents have in knowing whether,

6   where, and to what extent they are or may be exposed to DINP from industrial facilities that would

7   be required to provide such data to the Inventory.  If DINP were listed on the Inventory, Plaintiffs

8   would use the resulting information to, among other things, educate their members, supporters, and

9   other constituents about sources of DINP exposure in their communities, identify communities

10  facing substantial DINP exposures from industrial facilities and direct education and advocacy

11  resources to those communities, and advocate for regulation of DINP that would protect those

12  communities.  Plaintiffs' members, supporters, and other constituents also would have direct access

13  to information about industrial uses of DINP in their communities and environmental releases of the

14  chemical.  This would aid their understanding of the health risks they and their families face from

15  past and potential releases of DINP in their communities and enable them to take informed steps to

16  reduce or avoid such exposure.

17         15.     Accordingly, EPA's unreasonable and unlawful delay in finalizing the listing of

18  DINP on the Inventory causes direct injury to Plaintiffs.  Unless Plaintiffs' requested relief is

19  granted, Plaintiffs and their constituents will be adversely and irreparably injured by Defendants'

20  delay in concluding the DINP rulemaking.  These are actual, concrete injuries that are traceable to

21  Defendants' conduct and would be redressed by the relief Plaintiffs request.  Plaintiffs have no

22  adequate remedy at law.

23         16.     Defendant U.S. Environmental Protection Agency is a federal agency and is charged

24  with implementing the Right-to-Know Act, including the Toxics Release Inventory program.

25         17.     Defendant Michael Regan is the Administrator of the EPA and is sued in his official

26  capacity.

27

28

**LEGAL BACKGROUND**

18.     Congress established the Toxics Release Inventory as part of the Right-to-Know Act, which was enacted "to provide the public with important information on the hazardous chemicals in their communities."  H.R. Rep. No. 99-962, at 281 (1986) (Conf. Rep.).

19.     Section 313 of the Right-to-Know Act requires certain industrial facilities to submit to EPA annual information regarding the use, presence, treatment, and release of specified toxic chemicals.  42 U.S.C. § 11023.  These data, which make up the Inventory, identify the facilities in the United States where significant quantities of listed toxic chemicals are manufactured, processed, used, and disposed of, as well as information about where and how much of the chemicals are released into our air, water, and soil.

20.     These Inventory data are "intended to provide information to the Federal, State, and local governments and the public, including citizens of communities surrounding covered facilities." *Id*. § 11023(h).  Accordingly, EPA must make Inventory data available to the public "to inform persons about releases of toxic chemicals to the environment; to assist governmental agencies, researchers, and other persons in the conduct of research and data gathering; to aid in the development of appropriate regulations, guidelines, and standards; and for other similar purposes." *Id.*

21.     Members of the public can access the Inventory on EPA's website, which allows individuals to search for reporting facilities in specific communities and access the reporting forms the facilities submit to EPA to satisfy their obligations under the Right-to-Know Act.

22.     Congress developed an initial list of chemicals for inclusion in the Inventory.  *Id*. § 11023(a), (c).  At the same time, Congress gave EPA authority to add a chemical to the Inventory based on evidence that the chemical satisfies statutory criteria concerning its dangers to human health or the environment.  As relevant here, EPA may add chemicals to the Inventory that are:

> known to cause or can reasonably be anticipated to cause in humans—
> (i)      cancer or teratogenic effects, or
> (ii)     serious or irreversible—
>          (I)      reproductive dysfunctions,
>          (II)     neurological disorders,
>          (III)    heritable genetic mutations, or

*Complaint for Declaratory and Injunctive Relief,* No. 3:21-cv-7360

(IV)    other chronic health effects.

*Id*. § 11023(d)(2)(B).  In other words, evidence that a chemical is reasonably anticipated to cause cancer or other serious or chronic harm to human health justifies the chemical's addition to the Inventory.

23.    Consistent with the Right-to-Know Act's core purpose of providing information to the public, "[a]ny person" may petition EPA to add a chemical to the Inventory on the grounds that the chemical meets the human health criteria in 42 U.S.C. § 11023(d)(2)(B).  *Id*. § 11023(e)(1).

24.    Within 180 days of receiving a citizen petition, EPA must either "[i]nitiate a rulemaking to add . . . the chemical to the [Inventory]" or "[p]ublish an explanation of why the petition is denied."  *Id.*

25.    Further, the APA directs each federal agency "to conclude a matter presented to it" "within a reasonable time."  5 U.S.C. § 555(b).  A "reviewing court shall . . . compel agency action" that has been "unreasonably delayed."  *Id.* § 706(1).

## FACTUAL BACKGROUND

26.    DINP is a chemical added to plastic that is found in a wide range of products.  It is linked to many serious health effects, including harm to the reproductive organs, liver, and kidneys. *See Report to the U.S. Consumer Product Safety Commission by the Chronic Hazard Advisory Panel on Phthalates and Phthalate Alternatives* 7, 61, 95–97 (2014) (attached as Exhibit 2); Proposed Rule, Addition of Diisononyl Phthalate Category; Community Right-to-Know Toxic Chemical Release Reporting, 70 Fed. Reg. 34,437, 34,440 (June 14, 2005).  The State of California has identified DINP as a chemical "known to the state [of California] to cause cancer."  Cal. Code Regs. tit. 27, § 27001(b).

27.    DINP is used in a large assortment of consumer and commercial products, including floor coverings and other building materials, cleaning products, electronics, fabrics, fragrances, food contact substances, furniture, personal care products, and playground and sports equipment.  *See* EPA, *Final Use Report for Di-isononyl Phthalate (DINP)* 16–24 (2021) ("DINP Final Use Report") (attached as Exhibit 3).  Hundreds of millions of pounds of DINP are either manufactured or imported in the United States each year.  *See* EPA, *Final Scope of the Risk Evaluation for Di-*

*isononyl Phthalate (DINP)* 10, 36 (2021) (estimating total production volume of 200-500 million pounds in 2015) (attached as Exhibit 4).  And use of DINP is on the rise as it increasingly replaces another plastic additive, di(2-ethylhexyl) phthalate, in many applications. *See* DINP Final Use Report at 4.

28.     At the request of ExxonMobil Chemical Company and other DINP manufacturers, EPA is currently conducting a risk evaluation of DINP under the Toxic Substances Control Act.  *See* Am. Chemistry Council High Phthalates Panel, *Manufacturer Request for Risk Evaluation Diisononyl Phthalate (DINP)*, Docket No. EPA-HQ-OPPT-2018-0436-0004 (2019) (attached as Exhibit 5).  As part of this risk evaluation, EPA must analyze the risks that DINP poses to the general population as well as to groups who experience heightened exposure to DINP.  15 U.S.C. §§ 2602(12), 2605(b)(4)(A).

29.     Because the Inventory would identify for EPA facilities that release or dispose of substantial quantities of DINP, it would help EPA identify communities that face heightened exposure to DINP due to environmental releases of the chemical.

30.     The Inventory also identifies which facilities are manufacturing, processing, and using listed chemicals, and in what volumes.  Communities rely on this information to plan for accidents and emergencies—such as hurricanes and other extreme weather events—that can result in large releases of toxic chemicals.

31.     In February 2000, a non-profit advocacy group petitioned EPA to add DINP to the Inventory on the basis that "DINP is a known carcinogen and . . . has been shown to cause serious reproductive and developmental effects, as well as other toxic effects."  Wash. Toxics Coal., *Petition to Add Diisononyl Phthalate (DINP) to the Emergency Planning and Community Right-to-Know Act Section 313 List of Toxic Chemicals* 5 (Feb. 24, 2000) (attached to Exhibit 6).

32.     On September 5, 2000, EPA responded to this citizen petition by publishing in the Federal Register a proposal to add DINP to the Inventory.  In its proposed rule, EPA explained that DINP satisfies the statutory criteria for listing on the Inventory because "[t]he technical review of the toxicity data clearly indicates that DINP is known to cause or can reasonably be anticipated to cause cancer and other serious or irreversible chronic liver, kidney, and developmental toxicity in

humans." Proposed Rule, Addition of Diisononyl Phthalate Category; Community Right-to-Know Toxic Chemical Release Reporting, 65 Fed. Reg. 53,681, 53,686 (Sept. 5, 2000) (the "Proposed Rule"). According to EPA, it determined that listing DINP is warranted after "conduct[ing] a thorough hazard assessment." *Id*. at 53,683.

33.     On June 14, 2005, EPA issued a revised hazard assessment for DINP, in which it once again concluded that listing DINP on the Inventory is appropriate. In its revised hazard assessment, EPA reaffirmed "that DINP causes chronic liver toxicity" and that "developmental and chronic kidney toxicity are endpoints of concern for DINP." 70 Fed. Reg. at 34,440. EPA reserved judgment on whether cancer is an additional endpoint of concern for DINP. *Id.*

34.     Nevertheless, in the intervening twenty-one years, EPA has never finalized its proposed rule to add DINP to the Inventory, nor has it concluded that listing is not warranted.

35.     On April 9, 2021, concerned about the increasing use of DINP, the harms associated with exposure to DINP and other chemicals in the phthalates class, the lack of Inventory data to inform EPA's ongoing risk evaluation of DINP, and the lack of information detailing the presence of DINP in the communities they serve, Plaintiffs sent EPA a letter urging the agency to end its decades-long delay and commit to expeditiously finalizing EPA's Proposed Rule to list DINP on the Inventory. *See* Letter from Kelly Lester and Katherine O'Brien, Earthjustice, to Michael S. Regan, EPA Adm'r (April 9, 2021) (attached as Exhibit 6). The letter further requested that EPA finalize the Proposed Rule within sixty days. EPA never responded to the letter, except to acknowledge receipt.

36.     In response to Plaintiffs' subsequent email request, on July 7, 2021, EPA representatives met with Plaintiffs' counsel to discuss EPA's delay in listing DINP on the Inventory. In that meeting, EPA would not commit to finalizing the Proposed Rule, nor commit to a timeline for reaching a decision on whether to finalize that rule.

## **CLAIM FOR RELIEF**

37.     Plaintiffs incorporate and re-allege each and every allegation in paragraphs 1 through 36.

38.     The APA dictates that agencies "shall" conclude matters presented to them "within a reasonable time," and it provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1).

39.     Over twenty years ago, EPA proposed a rule to add DINP to the Inventory based on the agency's "thorough hazard assessment" and conclusion that DINP satisfies the statutory criteria for listing. Proposed Rule, 65 Fed. Reg. at 53,683. EPA has never disavowed that conclusion. To the contrary, in 2005 EPA reaffirmed in a revised hazard assessment that DINP satisfies the statutory criteria for listing. 70 Fed. Reg. at 34,438–40.

40.     Nevertheless, EPA has not finalized its Proposed Rule to list DINP on the Inventory, nor has it provided any public justification for its continued delay.

41.     EPA's failure to conclude this rulemaking for more than two decades without any justification—and despite the agency's *twice* concluding that listing DINP is warranted under the Right-to-Know Act—makes a mockery of Congress's mandate that the agency respond promptly to citizen petitions to add dangerous chemicals to the Inventory, *see* 42 U.S.C. § 11023(e)(1), and deprives Plaintiffs and their constituents of information that is vital to safeguarding their health and communities. EPA's delay is unreasonable, violates the APA, and warrants relief from this Court. 5 U.S.C. §§ 555(b), 706(1).

## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs respectfully request that the Court:

(a) Declare that EPA's failure to conclude the rulemaking it initiated in 2000 to add DINP to the Toxics Release Inventory violates the APA's mandate that an "agency shall proceed to conclude a matter presented to it" "within a reasonable time," 5 U.S.C. § 555(b), and constitutes "unreasonabl[e] delay[]," *id.* § 706(1);

(b) Order EPA to conclude this rulemaking process within sixty (60) days of this Court's order;

(c) Retain jurisdiction over this matter until Defendants have fulfilled their statutory and Court-ordered obligations;

(d) Award Plaintiffs reasonable costs and attorneys' fees; and

1    (e) Grant such other and further relief as the Court deems just and proper.

2

3    Dated: September 22, 2021                    Respectfully submitted,

4

5                                                 /s/Gregory C. Loarie
                                                  KATHERINE K. O'BRIEN
6                                                 *Pro Hac Vice Application pending*
                                                  Montana Bar No. 13587
7                                                 Earthjustice
                                                  P.O. Box 2297
8                                                 South Portland, Maine 04117
                                                  kobrien@earthjustice.org
9                                                 Tel: 212-284-8036/Fax: 212-918-1556

10                                                GREGORY C. LOARIE
                                                  State Bar No. 215859
11                                                Earthjustice
                                                  50 California Street, Suite 500
12                                                San Francisco, CA 94111
                                                  gloarie@earthjustice.org
13                                                Tel: 415-217-2000/Fax: 415-217-2040

14                                                *Counsel for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28